**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **TSURT, LLC and PEARL JAM, LLC,** | ) | |
| | ) | Case No.     2024-cv-7541 |
| **Plaintiffs,** | ) | |
| | ) | |
| vs. | ) | Honorable Joan H. Lefkow |
| | ) | |
| **VARIOUS JOHN DOES, VARIOUS JANE DOES and XYZ COMPANIES,** | ) ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF EX PARTE MOTION FOR
PRELIMINARY INJUCNTION WITH TEMPORARY
RESTAINING ORDER AND ORDER OF SEIZURE**

**I. INTRODUCTION**

This is a case of trademark infringement and unfair competition against parties who are selling unlicensed and infringing merchandise bearing the trademark, likenesses and logos of the musical group known as Pearl Jam.

Plaintiffs request entry of an *ex parte* temporary restraining order as well as an order directing seizure of the infringing merchandise. Such relief finds authority in the law and has been granted by courts around the United States.

These orders are not requested lightly. Without entry of these orders, neither this Court nor Plaintiffs will be able to prevent the sale of the infringing merchandise. Experience in other cases has shown that unless such orders are issued *ex parte*, Defendants will simply sell their infringing merchandise. Hence, a temporary restraining order and order of seizure is needed now, *ex parte*.

1

## II.   STATEMENT OF FACTS

Pearl Jam is a world-famous musical group who is on a nationwide tour. Pearl Jam is scheduled to appear at Wrigley Field in Chicago, Illinois on August 29 and 31, 2024. About 265,000 people are expected to attend the Pearl Jam concerts on its 2024 tour.

Inside the concert halls and other venues across the country, Plaintiffs expect to sell substantial quantities of merchandise, such as t-shirts, bearing the Pearl Jam trademark, likenesses and/or logos. These sales will produce income for the concessionaires, performing artists and the concert facility along with taxes for local cities and towns, state governments and the federal government.

This action has been instituted to remedy what is tantamount to the theft of a substantial portion of Plaintiffs' income by the sale of unlicensed merchandise by "bootleggers". Bootleggers have made it a practice of following nationally popular performers across the country on their concert tours to sell infringing merchandise in the vicinity of the performers' concerts.

They sell unauthorized merchandise bearing the names, logos, likenesses, trademarks and artwork of musical performers without their permission and without payment of royalties to them. The bootleggers' sale of that merchandise causes confusion in the minds of the consuming public as to who produces that merchandise.

As a result of the aforesaid bootlegging activities, substantial income is diverted from concert performers, legitimate concessionaires and performing artists. The names and reputations of the legitimate concessionaires and musical performers are traded upon and frequently injured by the bootleggers' inferior merchandise. To combat this problem, musical

performers and/or legitimate concessionaires, have undertaken a national program to halt the bootleggers' illegal activities. This action is part of that program.

The Court is respectfully referred to the Declarations of Kenneth A. Feinswog and Christopher Siglin that are submitted herewith. Mr. Feinswog's declaration outlines the history of bootlegging and the problems that musical performers have had dealing with bootleggers.

Mr. Siglin is the president of TSURT, LLC, the exclusive licensee to sell Pearl Jam merchandise on this tour and is supervising the sale of Pearl Jam merchandise on this tour. In his declaration, Mr. Siglin relates his experience in dealing with bootleggers to exhibit that the only effective relief that Plaintiffs can obtain against the bootleggers is nationwide seizure relief.

### III.   LEGAL ARGUMENT

**A.   A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION ARE MANDATED HERE AS PLAINTIFFS MEET ALL TESTS FOR SUCH EQUITABLE RELIEF.**

It is well established in law that Plaintiffs may obtain a temporary restraining order and preliminary injunction against trademark infringement and unfair competition. *Ross-Whitney Corporation v. Smith-Kline & French Laboratories*, 207 F.2d 190 (9th Cir. 1953).

A party seeking a preliminary injunction must demonstrate: "(1) some likelihood of succeeding on the merits, and (2) that it has 'no adequate remedy at law' and will suffer 'irreparable harm' if preliminary relief is denied. Only when a plaintiff makes this showing, should a court consider the remaining two elements: (3) the irreparable harm the non-moving party will suffer if preliminary relief is granted, balancing that harm against the irreparable harm to the moving party if relief is denied and (4) the public interest, meaning the consequences of granting or denying the injunction to non-parties." *Cassell v. Snyders*, 990 F.3d 539, 544–45 (7th Cir. 2021) (quoting *Abbott Labs. v. Mead Johnson & Co.,* 971 F.2d 6, 11 (7th Cir. 1992)).

Plaintiffs meet all the criteria of the aforesaid tests because of Defendants' flagrant activities in selling goods bearing identical copies of the Pearl Jam trademark, logos and likenesses.

1. **PLAINTIFFS WILL PREVAIL ON THE MERITS.**

Section 43(a) of the Lanham Act (15 U.S.C. §1125(a)), entitled "False Designations of Origin and False Descriptions Forbidden" provides:

> (a) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which ---
> (1) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person...shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

The stated intent of the act is to protect persons engaged in ". . . commerce against unfair competition," and "to prevent fraud and deception in such commerce." (15 U.S.C. §1127). Although §43(a) caused some judicial confusion in its early years, the courts are now in agreement that Congress, in enacting this section, created a new federal statutory tort which is remedial and should be broadly construed. *CBS, Inc. v. Springboard Int'l Records*, 429 F.Supp. 563, 566 (S.D.N.Y. 1976).

The elements of a cause of action under Section 43(a) are: (1) the Involvement of either goods or services; (2) activity which affects interstate commerce; and (3) a "false designation of origin, or any false description or representation . . . "relating to the product. *CBS, Inc., supra* at 566.

4

The Court in *New West Corp. v. NYM Co. of California, Inc.*, 595 F.2d 1194 (9th Cir., 1979), summarized the settled law in relation to actions prohibited by §43(a) as follows:

> To recover for a violation of this act, it is not necessary that a mark or trademark be registered (which is registered in this case). The dispositive question is whether the party has a reasonable` interest to be protected against false advertising . . ." Trademark infringement or unfair competition preclude one from using another's distinctive mark or name if it will cause the likelihood of confusion or deception as to the origin of the goods. Similarly, under the Lanham Act (43(a)), the ultimate test is whether the public is likely to be deceived or confused by the similarity of the marks . . .

As demonstrated in the declarations filed herewith, Defendants will appropriate the Pearl Jam trademark, likenesses and logos and use them in their sale of bootleg merchandise throughout the United States. That misappropriation will create the impression that the bootleg merchandise is in some manner connected with or originates from the owners of those marks and creates the likelihood of deception as to the origin of these products. *Apollo Distributing Co. v. Apollo Imports, Inc.*, 341 F. Supp. 445, 458 (S.D.N.Y. 1972). Defendants' actions are undeniably in violation both 15 U.S.C. §1114 and 15 U.S.C. §1125(a).

There is no need to show that any false descriptions or representations are willful or intentional. *Parkway Bacon Company v. Freihofer Bacon Company*, 255 F.2d 641, 648 (3d Cir. 1968). All that is required is that the representations or descriptions either be false or tending to falsely describe or represent the goods or services in question. Thus, liability is not restricted solely to descriptions that are literally false, but it extends to instances where the defendant creates a false impression. *U-Haul International, Inc. v. Jartran, Inc.*, 681 F.2d 1159 (9th Cir. 1982).

The primary issue that Plaintiffs must prove in order to prevail at trial is that there is a likelihood of confusion, mistake, or deception in Defendants' use of the trademarks and trade name. *New West Corp. v. NYM Co. of California, Inc., supra*. at 1202 ("ultimate test is whether the public is likely to be confused or deceived by the similarity of the marks"). All that is required is "likelihood of confusion". It is not necessary to prove that any person has been actually mistaken, confused or deceived; it is sufficient that there is likelihood of confusion, mistake or deception. *Bank America Corp. v. Bamieh*, 188 U.S.P.Q. 380, 382 (N.D. Cal. 1975).

The cases which have dealt with the situation where a defendant has been so bold as to sell counterfeit products with copies of Plaintiffs' trademarks have made it clear the Plaintiffs will prevail on the merits. In *re Vuitton et Fils S.A.*, 606 F.2d 1, 4 (2d Cir. 1979), the Court of Appeals of the Second Circuit mandated a district court to enter an *ex parte* temporary restraining order without notice to counterfeiters of the Plaintiffs' products. The Court noted that:

> . . . the likelihood of product confusion exists. The allegedly counterfeit Vuitton merchandise is virtually identical to the genuine items. Indeed, the very purpose of the individuals marketing the cheaper items is to confuse the public into believing that it is buying the true article.

Plaintiffs have established that much more than the possibility that Plaintiffs may prevail on their trademark infringement and unfair competition case with Defendants selling Pearl Jam merchandise to Pearl Jam fans outside Pearl Jam concerts. In view of the foregoing, an immediate temporary restraining order and preliminary injunction is necessary to prevent irreparable harm and injury to Plaintiffs.

## 2. UNLESS DEFENDANTS ARE ENJOINED, PLAINTIFFS WILL HAVE NO ADEQUATE REMEDY OF LAW AND WILL BE IRREPARABLY INJURED.

One of the realities of trademark infringement is that money damages for lost reputation are rarely adequate. Resting in equity, trademark damages are exceedingly difficult to measure in terms of dollars. *Omega Importing Corp. v. Petri-Kline Camera Co.*, 451 F.2d 1190, 1195 (2d Cir. 1971).

Plaintiffs submit that the harm they may suffer here from Defendants' use of the Pearl Jam mark is immeasurable since customers have bought and will continue to buy Defendants' goods thinking that they are goods produced and/or authorized by Plaintiffs.

The damage caused by confusion to the public is incapable of precise financial measurement given the intangible nature of an asset such as goodwill. *Communication Satellite Corporation v. Comset, Inc.*, 429 F.2d 1245, 1253 (4th Cir. 1971).

A trade name or trademark is a badge. It represents to the world the identity of the source of the goods that bear it. The reputation of Pearl Jam rests with its trademark. Where Defendants use the Pearl Jam mark, customers will associate Defendants' goods with Pearl Jam. Pearl Jam is entitled to its own reputation and not that of others. As Judge Learned Hand aptly noted in *Yale Electronic Corp. v. Robertson*, 26 F.2d 972, 974 (2d Cir. 1928), with respect to a trademark owner:

> his mark is his authentic seal; by it he vouches for goods which bear it; it carries his name for good or ill. If another uses it, he borrows the owner's reputation, whose quality no longer lies within his own control. This is an injury, even though the borrower does not tarnish it, or divert any sales by its use; for a reputation, like a face, is the symbol of its possessor and creator, and another can use it only as a mask.

7

Thus, if Defendants are permitted to use the Pearl Jam mark, then Defendants will be permitted to trade upon and tarnish Plaintiffs' valuable reputations.

### 3. THE BALANCE OF IRREPARABLE HARM FAVORS PLAINTIFFS.

The irreparable injury to Plaintiffs, and the public, weighs strongly in favor of granting the requested relief. The inconvenience to Defendants, if the preliminary injunction issues, is merely economic, consisting of lost sales of unauthorized, unlicensed and infringing products. Defendants have no legitimate interest in retaining unauthorized, unlicensed and infringing goods.

Given "the probable outcome of this action, this is a loss which [Defendants] may justifiable be called upon to bear." *Corning Glass Works v. Jeanette Glass Co.*, 308 F.Supp. 1321, 1328 (S.D.N.Y. 1970), *aff'd* 432 F.2d 784 (2d Cir. 1970). In weighing Defendants' possible economic loss against Plaintiffs' already occurring loss to sales, and their goodwill and reputations built up through years of selling high quality products, as well as the long-term disastrous effects of unfettered counterfeiting on their businesses, the balance falls heavily in Plaintiffs' favor.

### 4. THE ISSUANCE OF AN INJUNCTION IS NECESSARY TO PROTECT THE PUBLIC INTEREST.

Finally, whatever Plaintiffs' rights might be, the right of the public to be free from the deception and misbranding which results from unfair competition by another's use of a trademark are transcendent and aptly may be considered in such a case. As the court noted in *Stahly, Inc. v. M.H. Jacobs Co.*, 183 F.2d 914, 917 (2d Cir. 1950):

> It must be remembered that the trademark laws and the law of unfair competition are concerned also with the protection of the public from fraud and deceit . . . and it is obvious that the right of the public to be so protected is a right which transcends the rights

8

of the individual trademark owner and is beyond his power to waive.

This is a case where Defendants' use of the Pearl Jam trademark is deceiving the public in order to trade upon Plaintiffs' reputations by selling merchandise to unsuspecting people.

In *Playboy Enterprises, Inc. v. Baccarat Clothing Co., Inc.*, 692 F.2d 1272 (9th Cir. 1982), the Ninth Circuit Court of Appeals emphasized the necessity for stringent remedies against those who seek to counterfeit trademarks and labels in order to trade upon another's goodwill. The Court noted:

> In addition to the harm caused the trademark owner, the consuming public is equally injured by an inadequate judicial response to trademark infringement. Many consumers are willing to pay substantial premiums for particular items which bear famous trademarks based on their belief that such items are of the same high quality as is traditionally associated with the trademark owner. As a result of this trademark infringement, the consuming public is denied the benefit of their bargains and the reputation and goodwill of the trademark owner is accordingly harmed. For these reasons, it is essential that the trial courts carefully fashion remedies which will take all the economic incentive out of trademark infringement.

*Playboy Enters.*, 692 F.2d at 1275. Accordingly, the public will be irreparably injured by Defendants' use of the Pearl Jam trademark.

5. **THIS COURT HAS THE AUTHORITY TO ISSUE AN EX PARTE TEMPORARY RESTRAINING ORDER AND SEIZURE ORDER.**

Once a violation of the Lanham Act is demonstrated, injunctive relief will readily issue pursuant to Sec. 34 (15 U.S.C. §1116) thereof. *Boston Professional Hockey Ass'n v. Dallas Cap & Emblem Mfg., Inc.*, 510 F.2d 1004, 1013 (5th Cir. 1975), cert. denied, 423 U.S. 868, reh. denied, 423 U.S. 991 (1975). Sec. 34 (15 U.S.C. §1116) of the Lanham Act gives the court the

power to grant injunctions … "to prevent the violation of right" of the owner of a mark or to prevent violations of Section 1125(a). Clearly, the Lanham Act grants *ex parte* seizure power to this Court. The critical operative word is "prevent" which, in the instant case, is impossible without nationwide seizure.

As to enforcement remedies, seizure is specifically singled out and mandated in 15 U.S.C. 1118 which provides that:

> In any action under this Act, in which a violation of any right of the registrant of a mark . . . or a violation under Section 1125(a) of this title shall have been established the court may order that all labels, signs, prints, packages, wrappers, receptacles and advertisements in the possession of the defendant, bearing the mark or any reproduction, counterfeit, copy or colorable imitation thereof, and all plates, molds, matrices and other means of making the same, shall be delivered up and destroyed.

The foregoing sections grant this Court the right to fashion a nationwide order to seize and deliver for destruction infringing goods.[1]

Perceiving both the unfortunate reality of this situation, the covert nature of bootleggers' activities, and the vital need to establish an economic disincentive for trademark counterfeiting, trademark owners sought and district courts now grant what are generally referred to as national seizure orders. Such Orders empower the United States Marshals, or other law enforcement authorities to seize infringing merchandise within a three to twenty-five-mile radius of concert performances of the musical group or performers that is the subject of said action. Copies of many of those orders are annexed to the Declaration of Kenneth A. Feinswog submitted herewith.

---

[1] 15 U.S.C. §1116 also sets forth a procedure for issuing seizure orders.

It is essential to note that in most instances the nationwide service orders granted by the various courts have (a) gone unreported and, more to the point (b) have rarely if ever been challenged since the defendants are loath to appear. In one of the few decisions where a nationwide seizure order was contested by a defendant, in the action entitled *Great Southern Co., Inc. et al v. John Doe et al* 82 Civ. 294, N.D. Ohio, April 30, 1984, the Honorable Nicholas J. Walinski upheld a nationwide seizure order and stated:

> The Court first notes its authority to grant injunctions of a nationwide scope. Section 34 of the Lanham Act 15 U.S.C. 1116 gives 'any district court of the United States' the power to grant injunctions which 'may be served on the parties . . . anywhere in the United States where they may be found, and shall be operative and may be enforced by the Court by which such injunction was granted, or by any other U.S. District Court in whose jurisdiction the defendant may be found.' Particularly in circumstances where the Plaintiff's market area is nationwide, the Plaintiff must be entitled to nationwide protection. See, e.g. *Golden Door, Inc. v. Odisho*, 437 F. Supp 956 (N.D. Cal. 1977); *Five Platters, Inc. v. Purdie*, 419 F.Supp. 372 (D. Md. 1976). Because Plaintiffs in this case are a musical group presently engaged in a tour throughout the U.S., this Court's issuance of a nationwide injunction was necessary and rightful. (A copy of that decision is annexed to the Declaration of Kenneth A. Feinswog as Exhibit C).

The Court, through its grant of equity power, has the authority to issue such relief as merits the necessities of each particular case. *Hecht Company v. Bowles*, 321 U.S. 321 (1944). An equitable remedy is a blend of what is necessary, what is fair and what is workable. The court must look to the practical realities and necessities involved in reconciling competing interests. *Lemon v. Kurtzman*, 411 U.S. 192, 200-201 (1973). The practical reality of the present set of circumstances is that Plaintiffs have no other recourse and have no means of preventing their loss without nationwide seizure relief. Without the remedy of nationwide seizure, this lawsuit will be an exercise in futility.

## IV. CONCLUSION

Defendants' unauthorized use of the Pearl Jam trademark infringes upon Plaintiffs' rights. Given Defendants' reckless disregard of Plaintiffs' rights, nothing short of nationwide injunctive restraint and seizure will prevent Defendants from infringing on the Pearl Jam mark in the future. As noted above, under these circumstances, the Courts have not hesitated to grant nationwide seizure of all infringing merchandise.

For the reasons set forth above and, in the Motion, Complaint and declarations submitted herewith, Plaintiffs respectfully request that the Court grant their motion for a Temporary Restraining Order, Preliminary Injunction and Order of Seizure.

Dated: August 21, 2024

Respectfully submitted,
TSURT, LLC and PEARL JAM, LLC

By: /s/ *Steven P. Mandell*
One of their attorneys

Steven P. Mandell (ARDC #6183729)
Bryan G. Lesser (ARDC #6330021)
MANDELL MENKES LLC
1 N. Franklin Street, Suite 900
Chicago, Illinois 60606
Telephone: (312) 251-1000
Email:  smandell@mandellmenkes.com
          blesser@mandellmenkes.com

Kenneth A. Feinswog (*pro hac vice*)
Law Offices of Kenneth A. Feinswog
400 Corporate Pointe, Suite 300
Culver City, CA 90230
Telephone: 310-846-5800
Email: kfeinswog@gmail.com

*Counsel for Plaintiffs*

12