IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TSURT, LLC and PEARL JAM, LLC, | ) |
| | ) Case No. 2024-CV-7541 |
| Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | ) |
| VARIOUS JOHN DOES, VARIOUS | ) |
| JANE DOES and XYZ COMPANIES, | ) |
| | ) |
| Defendants. | ) |

**DECLARATION OF KENNETH A. FEINSWOG IN SUPPORT OF EX PARTE
MOTION FOR PRELIMINARY INJUNCTION WITH TEMPORARY
RESTRAINING ORDER AND ORDER OF SEIZURE**

I, KENNETH A. FEINSWOG, declare:

1. I am the attorney for Plaintiffs and am admitted to practice before the Courts of the States of New York, New Jersey and California and the Federal Courts for the District of New Jersey, the Southern and Eastern Districts of New York, the Central, Southern, Eastern and Northern Districts of California, the District of Colorado and the Southern District of Texas.

2. I have overseen anti-counterfeiting programs for music merchandising companies for more than 40 years. I have filed motions to obtain nationwide seizure orders since 1983. This declaration is submitted together with Plaintiffs' Memorandum of Law in support of their Motion for Temporary Restraining Order, Order of Seizure and Preliminary Injunction.

1

3.　　　Plaintiffs have filed a Complaint against certain unidentified and unidentifiable defendants, all of whom have violated or will violate Plaintiffs' rights under the Lanham Act, 15 USC §1051 et seq., in connection with concert performances of the musical group known as Pearl Jam. For a full recitation of the facts, this Court is respectfully referred to the Complaint, the Declaration of Christopher Siglin and the Memorandum of Law submitted herewith.

4.　　　During the past 40 years of tremendous commercial growth of popular music, the public has not only purchased millions of records and concert tickets but has further sought to identify themselves with and declare allegiance to their favorite performers by purchasing various articles of merchandise, t-shirts, patches, posters, photographs, jerseys, caps, belt buckles, jackets and other items that embody the names, photos, likenesses, logos, trademarks and/or artwork of such performers. Unquestionably, the aforementioned public statement of identification and allegiance to the performers and the souvenir value of the aforesaid merchandise is the reason why fans will pay more than $40.00 for a t-shirt displaying the performer's name or likeness which t-shirt might otherwise retail (without such name or likeness) for $6.00.

5.　　　Concurrently with the growth of the legitimate merchandising business, an illegal multimillion dollar industry has developed in the United States involving the unlawful manufacture, sale and distribution of "bootleg" merchandise bearing the names, trademarks, likenesses or artwork relating to popular entertainers.

6.　　　Defendants are individuals and companies commonly referred to as "bootleggers" of merchandise who, without permission or authorization, misappropriate the names, likenesses, logos, symbols, artwork and/or trademarks of performing artists and musical groups for use on merchandise that the "bootlegger" Defendants peddle to the general public in order to cash in on

the musical performers' huge commercial value and reputation, all in violation of the rights of those individuals and companies that possess the exclusive right to engage in such activity.

7. To add insult to injury, the merchandise that the bootleggers manufacture and sell is, in nearly all instances, of inferior quality and not only violates Plaintiffs' rights but adversely affects the general public and irreparably injures the performers' reputations for excellence and integrity in the pursuit of their professional careers.

8. The glut of bootleg merchandise on the market deprives the artists, whose names, likenesses, symbols, logos and designs appear on the illicit infringing merchandise, of the earnings and credit that they (the artists) deserve from the investment of their capital and their creative energies into the development of their careers.

9. Defendants are preventing these artists from controlling the manner in which the artists desire to be presented to the general public and have given the public the false impression that their illicit and inferior merchandise was either sponsored or approved by those artists.

10. Moreover, since the bootleggers pay no royalties, and no fees to the stadium or concert hall where their illegal product is peddled, and upon information and belief, no taxes in connection with the sale of that merchandise, the bootleggers (defendants herein) are able to undercut the prices of the legitimate vendors who abide by the law in the conduct of their business activities to Plaintiffs' substantial detriment.

11. These bootleggers are wrongfully profiting from the tremendous energies and reputations of performers in the entertainment industry and flagrantly and unlawfully impeding such artists in their personal and professional advancement.

12. As attested in the declaration submitted by Christopher Siglin, this illegal activity occurs at most concerts of major popular performers in the United States. Such illegal activity is part of a nationwide network of bootleg sales companies consisting of major manufacturers located throughout the United States and dozens of sub-peddlers who follow particular musical groups from concert to concert throughout an entire concert tour. The unlawful activities described herein will ultimately be accomplished by individual local sellers who acquire bootleg merchandise from major illegal manufacturers, printers and distributors. The major manufacturers will first infiltrate the area surrounding concert halls on the day and evening of concert performances for the purpose of then selling and distributing their illicit wares to the local sellers who finally sell the illegal merchandise to the public.

13. Defendants are individuals and companies who are part of the illegal bootlegging industry. Defendants will most assuredly appear before, during and after each of the upcoming concert performances on the current Pearl Jam tour including its concert engagements at Wigley Field in Chicago, Illinois on August 29 and 31, 2024. Defendants will distribute their wares to local sellers who then take up movable locations on the access roads or city blocks, will not identify themselves, will not cease and desist from their unlawful activities unless compelled by this Court to do so and will disappear into the night after the concerts absconding with their wrongful profits. Unless a seizure order is granted, they will siphon off tens, if not hundreds, of thousands of dollars in sales <u>per concert</u> from Pearl Jam.

14. There is recent law supporting Plaintiffs' motion. Recognizing that these illegal peddlers damage the artists irreparably, do not identify themselves, disappear into the night following the conclusion of the concerts and, without the issuance of a Preliminary Injunction,

4

Temporary Restraining Order and Order of Seizure, will remain immune from judicial process, the Federal Courts throughout the country have issued *ex parte* temporary restraining and seizure orders in substantially the same form submitted to this Court.  In fact, this Court issued *ex parte* temporary restraining and seizure orders in substantially the same form as the one Plaintiffs are requesting in cases involving the musical performers known as: "DEAD & COMPANY" (by Judge Shannon Johnson Coleman, *Live Nation Merchandise, Inc. v. John Does,* 1:19-cv-03762, N.D. Ill., June 13, 2019); "PHISH" (by Judge Robert W. Gettleman, *Phish, Inc. v. John Does*, 1:17-cv-05050, N.D. Ill., July 11, 2017); "PHISH" (by Judge Shannon Johnson Coleman*, Phish, Inc. v. John Does*, 1:16-cv-06265, N.D. Ill., June 17, 2016); "DRAKE" (by Judge Sara L. Ellis, *Live Nation Merchandise, Inc. v. John Does,* 1:16-cv-07339,  N.D. Ill., July 26, 2016); "BLACK SABBATH" (by Judge John Robert Blakey, *Live Nation Merchandise, Inc. v. John Does,*  1:16-cv-00563 N.D. Ill., January 21, 2016); "ARIANA GRANDE" (by Judge Charles P. Kocoras,  *Bravado International Group Merchandising Services, Inc. v. John Does,* 1:15-cv-01621, N.D. Ill., February 26, 2015); "PEARL JAM" (by Judge Thomas M. Durkin, *TSURT, LLC v. John Does,*  1:13-cv-04990, N.D. Ill., July 15, 2013);  "GREEN DAY" (by Judge Robert W. Gettleman, *Bravado International Group Merchandising Services, Inc v. John Does*, 1:13-cv-02227, N.D. Ill.,  March 25, 2013); "AEROSMITH" (by Judge Virginia Kendall, *Live Nation Merchandise, Inc v. John Does,* 1:12-cv-04828, N.D. Ill., June 13, 2024); GUNS N ROSES" (by Judge James F. Holderman, *Bravado International Group Merchandising Services, Inc v. John Does*, 02-CV-8168, N.D. Ill., November 14, 2002); "R. KELLY and JAY-Z" (by Judge Harry D. Leinenweber, *Bravado International Group Merchandising Services, Inc v. Does*, 04-CV-6207, N.D. Ill., September 28, 2004); "THE ROLLING STONES" (by Charles R. Norgle, Sr., *Tour II (USA), Inc. v. John Does*, 97-CV-6517,

N.D. Ill., Sept. 24, 1997); and "TOM PETTY AND THE HEARTBREAKERS" (by Judge Charles R. Norgle, Sr., *Winterland Concessions Company v. John Does*, 95-CV-1494, N.D. Ill., March 8, 1995). Copies of some of those orders are annexed hereto as Exhibit A.

15. Other cases with substantially the same form of *ex parte* temporary restraining and seizure orders that were entered in other district courts include those brought by among others, the musical performers known as "ROD WAVE" (by Judge Lee H. Rosenthal, *Rod Wave v. John Does,* 4:23-cv-04509, S.D. Tex., December 6, 2023); "RBD" (by Judge Andrew S. Hanen, *Merch Traffic, LLC, v. John Does,* 4:23-cv-03065, S. D. Tex., August 25, 2023); "GUNS N' ROSES" (by Judge Esther Salas, *Global v, John Does,* 2:23-4180-ES, D. N.J., August 8, 2023); "PEARL JAM" (by Judge Lorna G. Schofield, *v. John Does,* 1:22-cv-07493, S.D. N.Y.., September 2, 2022); "BAD BUNNY" (by Judge Claire C. Cecchi, *Stensrud, Inc. v. John Does*, 2:22-cv-01249-CCC, D.N.J., March 9, 2022); "BACKSTREET BOYS" (by Judge Troy L. Nunley, *Global Merchandising Services, Ltd. v. Does,* Case No. 3:19-cv-01411-TLN-JDP, W.D. Cal., July 26, 2019); "MARILYN MANSON and ROB ZOMBIE (by Judge Henry Edward Autry, *Global Merchandising Services, Ltd. v. Does,* Case No. 4:18CV1117 HEA E.D. Mo, July 11, 2018); "SLAYER" (by Judge Anthony J. Battaglia, *Global v. Does*, Case No. 3:18-cv-00862-AJB S.D. Cal., May 9, 2018); U2" (by Judge Ronnie L. White, *Live Nation v. John Does*, 4:18-CV-00660-RLW, E.D. Mo., April 30, 2018); "OZZY OSBOURNE" (by Judge F. Dennis Saylor, *Global Merchandising Services, Ltd. v. Does*, Case No. 1:18-cv-11861 FDS, D. Mass., September 4, 2018); "PINK" (by Judge Rya W. Zobel, *Araca Merchandise, L/P. v. Does,* Case No. 18-cv-10648 RWZ, D. Mass., April 14, 2018); "ROGER WATERS" (by Judge Troy L. Nunley, *Global Merchandising Services, Ltd. v. John Does*, CV-17-1169-TLN, E.D. Cal., June 7, 2017); "JOURNEY" (by Judge Andre Birotte, Jr.,

6

*F.E.A., Inc. v. Does*, Case No. 2:16-cv-03062 AB, C.D. Cal., May 10, 2016); "SHAWN MENDES" (by Judge Cathy Ann Bencivengo, *Arista Arena, Inc. v. Does,* Case No. 16-cv-1831 CAB, S.D. Cal, July 19, 2016); BLINK 182" (by Judge Cathy Ann Bencivengo, *TSURT, LLC v. Does,* Case No. 16-cv-1816 CAB S.D. Cal., July 18, 2016); "FIVE SECONDS OF SUMMER" (by Judge Cathy Ann Bencivengo, *F.E.A., Inc. v. Does*, Case No. 3:15-cv-01543 CAB, S.D. Cal, July 15, 2015); "THE EAGLES" (by Judge Audrey B. Collins, F.E.A*., Inc. v. Does*, Case No. 2:14-cv-03062 AB, C. D. Cal., January 10, 2014); "JUSTIN BIEBER" (by Judge Audrey B. Collins, *Bravado v. John Does*, CV-12-8335-ABC, C.D. Cal., September 27, 2012); "MOTLEY CRUE" (by Judge Audrey B. Collins, *Live Nation Merchandise, Inc. v. John Does*, CV-11-00156-ABC, C.D. Cal., June 7, 2011); "BRITNEY SPEARS" (by Judge Frank C. Damrell, Jr., *Brothers Entertainment, Inc. v. John Does*, 09-912-FCD, E.D. Ca., April 17, 2009); "THE WHO" (by Judge Jan E. Dubois, *Bravado v. John Does*, 2:06-CV-03930-JD, E.D. Pa., September 15, 2006); "B2K" (by Judge Audrey B. Collins, *Bravado v. John Does*, 2:03-CV-04658-ABC, C.D. Cal., July 1, 2003); "THE WHO" (by Judge Edward Rafeedie, *Bravado v. John Does*, 02-CV-5026 ER, C.D. Cal., June 25, 2002); "DIXIE CHICKS" (by Judge Larry J. McKinney, *Giant v. John Does*, 1:03-CV-0651 DFH-WTL S.D. Ind., May 6, 2003); "IRON MAIDEN" (by Judge Victor Marrero, *Smith v. John Does*, 00 CIV 5702, S.D.N.Y., August 2, 2000); "BON JOVI" (by Judge Clarence Newcomer, *Bravado v. John Does*, 00 CIV. 5643, E.D. Pa., November 8, 2000); "NINE INCH NAILS" (by Judge Raymond J. Broderick, *J. Artist Management v. John Does*, 00 CIV. 2251, E.D. Pa., May 3, 2000); "BLINK-182" (by Judge Carlos Moreno, *Poo Butt, Inc. v. John Does*, 00 Civ. 4707 CM, C.D. Cal., May 5, 2000); "ALANIS MORRISETTE" (by Judge Louis C. Bechtle, *Hi-Fidelity v. John Does*, 99 CIV. 671, E.D. Pa., February 12, 1999); "BARENAKED LADIES" (by Judge Charles R. Weiner, *BNC*

*Touring v. John Does*, 98 CIV. 5217, E.D. Pa., October 1, 1998); "DEPECHE MODE" (by Judge Denise Cote, *Gore v. John Does*, 98 Civ. 7576 (DLC), S.D.N.Y., October 28, 1998); "SPICE GIRLS" (by Judge Jacob Mishler, *Bunton v. John Does*, 98 Civ. 4379, E.D.N.Y., June 24, 1998); "METALLICA" (by Judge William D. Keller, *Giant Merchandising v. John Does*, 96-8759 WDK, C.D. Cal., December 17, 1996); "GREEN DAY" (by Judge William J. Rea, *Brockum Company v. John Does*, 94-7374 WJR, C.D. Cal., November 2, 1994); "SHANIA TWAIN" (by Judges Claudia Wilken and Saundra Brown Armstrong, *Twain v. John Does*, 98 Civ. 2420, N.D. Cal., June 17, 1998); "PAGE/PLANT" (by Judge Harvey Schlesinger, *Plant v. John Does*, 98-499, M.D. Fla. May 22, 1998); "U2" (by Judge Philip M. Pro, *Hewson v. John Does*, 97-00484-PMP(LRL), D. Nev., April 23, 1997); "BONE THUGS-N-HARMONY", (by Judge Richard J. Arcaro, 97-0660A(M), *Howse v. John Does*, W.D.N.Y., September 8, 1997); "LOLLAPALOOZA" (by Judge Philip M. Pro, *Giant Merchandising v. John Doe*, 94-00592 PMP(RJJ), D. Nev., July 6, 1994); "JOHN MELLENCAMP" (by Judge Saundra Brown Armstrong, *Mellencamp v. John Does*, 92 Civ. 0742, N.D. Cal., February 13, 1992); "BILLY RAY CYRUS" (by Judge Shirley Wohl Kram, *Cyrus v. John Does*, 93 Civ. 3257 (SWK), S.D.N.Y., May 14, 1993); "ROBERT PLANT" (by Judge Jacob Mishler, *Robert Plant v. John Does*, 90 Civ. 2350, E.D.N.Y., July 10, 1990); "BON JOVI" (by Judge Jacob Mishler, *Bon Jovi v. John Does*, 89 Civ. 0771, E.D.N.Y., March 9, 1989 and 85 Civ. 4058, November 7, 1985); "ZZ TOP" (by Judge James C. Paine, *Gibbons et al v. John Does*, 83 Civ. 6410, S.D. Fla., May 20, 1983); "MONSTERS OF ROCK" (by Judge William M. Hoeveler, *Brockum Company v. John Does,* 88-0982, S.D. Fla. June 1, 1988); "VAN HALEN" (by Judge Jose A. Gonzalez, *Brockum Company v. John Does*, 84-6033, S.D. Fla., March 26, 1986); "WASP" (by Judge Thomas P. Griesa, *Duran v. John Does*, 85 Civ. 0523, S.D.N.Y., January 22, 1985); "THE

8

CLASH" (by Judge Richard A. Gadbois, Jr., *Great Southern Company v. John Does,* 84 Civ. 0262, C.D. Ca., January 16, 1984); "TWISTED SISTER" (by Judge Shirley Wohl Kram, *Segall v. John Does*, 84 Civ. 5186 S.D.N.Y., August 14, 1984); "AEROSMITH" (by Judge Edward Weinfeld, *Perry v. John Does*, 84 Civ. 4481, S.D.N.Y., June 27, 1984); "DURAN" (by Judge Mariana R. Pfaelzer, *Great Southern Company v. John Does*, 84 Civ. 0624, C.D. Cal., February 9, 1984); "MOTLEY CRUE" (by Judge Mariana R. Pfaelzer, *Wharton v. John Does*, 83 Civ. 3395, C.D. Cal., November 10, 1983); "BLACKFOOT" (by Judge Milton Pollack, *Medlocke v. John Does*, 83 Civ. 6231, S.D.N.Y., January 27, 1982); "JUDAS PRIEST" (by Judge Thomas Griesa, *Halford v. John Does*, 80 Civ. 3801, S.D.N.Y., July 3, 1980); "MOLLY HATCHET" (by Judge Mary Johnson Lowe, *Hlubeck v. John Does*, 80 Civ. 6083, S.D.N.Y., October 28, 1980); and "IRON MAIDEN" (by Judge Nicholas J. Walinski, *The Great Southern Company v. John Does*, 82 Civ. 294, N.D. Ohio, May 14, 1982). Copies of some of those orders are annexed hereto as Exhibit B.[1]

16. Although the aforementioned orders protect the plaintiffs from illegal sales at the concerts while affording the defendants full opportunity for a hearing, it is noteworthy that rarely have any defendants appeared in court on the hearing date to contest the restraint and seizure.

17. In one of the few cases where an objection was raised by a defendant in *The Great Southern Co., Inc. et al. v. John Doe,* Civ. 82-294 N.D. Ohio - Western Division, Judge Nicholas J. Walinski upheld the nationwide seizure relief with respect to the musical group IRON MAIDEN. A copy of the Memorandum and Order issued in that action is annexed hereto as Exhibit C.

---

[1] Although the vast majority of federal district judges have granted this relief, a few judges denied the relief requested. (See *Plant v. John Does*, 98-1137 (S.D. Fla. 1998). After the relief in said case was denied, another federal judge in another district, after being fully apprised of the facts regarding said denial, granted nationwide seizure relief for that tour.

18. A bootleg ban at one concert does not come close to stopping the "Mr. Big" bootleggers from moving on to the next concert and the next. The major bootleggers understand the economic realities and limitations of the artists' efforts to stop illegal merchandise sales. Prior to the issuance of nationwide seizure orders, the bootleggers relied on the artists' economic inability to sustain multiple lawsuits at each concert. The bootleggers have been and continue to be extremely sophisticated regarding whether a "Seizure Order" has been entered for a particular concert. Prior to the issuance of nationwide injunctions, the artists achieved anti-bootlegger success only at the major venues. As attorney for the plaintiffs in many of those cases since 1983, I can affirm that the enforcement of nationwide seizure orders was and continues to be an effective tool in combating bootlegging. Said orders have curtailed bootlegging so effectively that sales have increased more than 100% at concerts where an order is enforced. The economic impact is staggering. Plaintiffs are respectfully requesting that this Court use its equity power to bring Defendants before the bar and put a stop to this untenable situation. The prayed for relief is the only effective tool over the course of an entire concert tour to combat bootlegging.

19. The judges in the aforementioned cases recognized the imperative of stopping the bootleggers wherever located and granted an Order of Seizure and Injunction, which banned the sale of bootleg merchandise within a sufficient radius around each concert engagement of the particular musical performer. The injunctions and seizure relief had the nationwide scope provided by the Lanham Act, 15 USC §1116, in order to avoid (unnecessary) multiple litigations to effectively remedy trademark infringement.

20. It is imperative, therefore, that the prayed for Temporary Restraining Order/Preliminary Injunction and Order of Seizure encompass all concerts on the present Pearl Jam concert tour if Plaintiffs are to be substantively protected.

21. As has been the case in the aforementioned cases, it is imperative that such Orders encompass the areas outside the concert sites so that the authorized parties are able to serve process on the major bootleggers. As a result, the requested Orders must encompass a sufficient radius around each venue in order to be enforceable against the major suppliers of the bootleg merchandise.

22. This declarant repeats and emphasizes that we are dealing with nationwide, concerted and highly organized bootleg ring(s) making literally millions of dollars off of hundreds of touring artists. Without the relief sought herein, including seizure of the illicit merchandise, the bootleggers will remain free to continue to conduct their illegal activities, immune from the lawful processes of this Court and the mandates of the Lanham Act.

23. Plaintiffs have moved by Order to Show Cause rather than notice of motion since Defendants are unknown. By virtue of their inherent anonymity, Defendants will not voluntarily obey a restraining order but would on the contrary sell their merchandise and then simply disappear into the night. Accordingly, were we to wait until they actually arrive at a local concert site, to attempt to identify them and to serve them with notice, no hearing could be held until the following day, by which time all damage to Plaintiffs would have been done and Defendants would have disappeared.

24. Based on the foregoing, Plaintiffs respectfully request that the Court grant this Motion in all respects.

Executed on this 21th day of August, 2024 at Los Angeles, California.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

                                                s/ Kenneth A. Feinswog
                                                   Kenneth A. Feinswog